## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.                         CRIMINAL ACTION NO. 2:23-cr-00031-9

MARK LESLIE LIVELY,

          Defendant.

### MEMORANDUM OPINION & ORDER

Before the Court is Defendant Mark Leslie Lively's ("Defendant") Renewed Motion for Judgment of Acquittal (ECF No. 772) and Motion for New Trial (ECF No. 782.)   For the reasons provided below, the Motions are **DENIED**.

### I.    BACKGROUND

On July 17, 2024, a jury convicted Defendant of Conspiracy to Distribute 50 Grams or More of Methamphetamine and Possession with Intent to Distribute 50 Grams or More of Methamphetamine in violation of 21 U.S.C. § 841(a)(1).   (ECF No. 759.)   During the trial, Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a), which the Court denied.

On July 31, 2024, Defendant timely filed a Renewed Motion for Judgment of Acquittal. (ECF No. 772.)   The Government filed a timely response to this Motion.   (ECF No. 776.)   Also on July 31, 2024, Defendant moved for a 45-day extension of the deadline to file post-trial motions. (ECF No. 773.)   The Court granted the motion and extended the post-trial motions deadline to

1

September 16, 2024.   (ECF No. 775.)   On September 16, 2024, Defendant timely filed a motion

for a new trial, (ECF No. 782), and the Government timely filed a response.   (ECF No. 786.)

## II.    LEGAL STANDARD

### A.  Renewed Motion for Judgment of Acquittal

Under Federal Rule of Criminal Procedure 29(a), "the court . . . must enter a judgment of

acquittal of any offense for which the evidence is insufficient to sustain a conviction."   "A

judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter

of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the

indictment."   *United States v. Alvarez*, 351 F.3d 126, 129 (4th Cir. 2003) (quoting *Smalis v.*

*Pennsylvania*, 476 U.S. 140, 144 (1986)).

"The test for deciding a motion under Rule 29(a) is 'whether there is substantial evidence

(direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant

[the trier of fact] finding that the defendant was guilty beyond a reasonable doubt.'"   *United States*

*v. Blankenship*, 2015 WL 8731688, at *1 (S.D. W. Va. Dec. 9, 2015) (quoting *United States v.*

*McCloskey*, 682 F.2d 468, 473 (4th Cir. 1982)).   "Although the United States may rely on

inferences and circumstantial evidence, it 'nevertheless must establish proof of each element' of

the crime 'beyond a reasonable doubt.'"   *United States v. Ismail*, 97 F.3d 50, 55 (4th Cir. 1996)

(quoting *United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996)).   "If a 'rational trier of fact'

can find that the essential elements of a charged offense are supported by the evidence, the motion

must be denied."   *Blankenship*, 2015 WL 8731688, at *1 (quoting *United States v. Singh*, 518

F.3d 236, 246 (4th Cir. 2008)).   In making this determination, "the Court may not usurp the jury's

exclusive function by weighing evidence, drawing inferences of fact, resolving evidentiary

2

conflicts, or assessing [witness] credibility." *United States v. Harris*, 2012 WL 12891420 at *1 (S.D. W. VA. Jul. 18, 2012) (citing *United States v. Arrington*, 719 F.2d 701, 704 (4th Cir. 1983)).

### B. Motion for New Trial

Under Rule 33, the Court has the discretion to grant a new trial if doing so is in "the interest of justice." *United States v. Millender*, 970 F.3d 523, 531 (4th Cir. 2020) (first citing *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985); then citing Fed. R. Crim. P. 33(a)). A new trial is warranted "[w]hen the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." *Arrington*, 757 F.2d at 1485. Though a district court may not "draw inferences . . . unfavorable to the Government" in considering a motion for a judgment of acquittal, "[i]n determining the necessity of a new trial, such inferences are allowed." *Millender*, 970 F.3d at 532 (quoting *United States v. Campbell*, 977 F.2d 854, 860 (4th Cir. 1992)). The court may also use its observations at trial to "evaluate the credibility of the witnesses" in adjudicating a motion for a new trial. *Id.* Despite this broad standard, "the trial court's discretion should be exercised sparingly, and a new trial should be granted only when the evidence weighs heavily against the verdict. *Arrington*, 757 F.2d at 1486.

### III. DISCUSSION

### A. Renewed Motion for Judgment of Acquittal

Defendant renews his Motion for Judgment of Acquittal, pursuant to Federal Rules of Criminal Procedure, Rule 29(c)(1), "as to Counts One of Two of the Second Superseding Indictment."[1] (ECF No. 772 at 1.) Defendant argues that the government failed to present

---

[1] The offense alleged in Count Three of the Second Superseding Indictment was re-numbered for purposes of the jury trial and was referred to as Count Two throughout the jury instructions and on the verdict form. Defendant's reference to Count Two likely means Count Two on the verdict form.

3

legally sufficient evidence of intent to distribute. (*Id.* at 2). In support of this assertion, Defendant analyzes testimony from the law enforcement witnesses and argues that the witnesses did not produce any evidence that Defendant had the intent to distribute outside of their "assumptions" that the seized methamphetamine was a distributable amount based on its weight. (*See id.* at 2, 4, 6.)

Defendant begins with analyzing the testimony of Charleston Police Department Corporal Brandon Rinehart, who conducted the traffic stop on Defendant. (*Id.* at 2.) Defendant argues that "[i]n his testimony, Corporal Rinehart admits that he has no evidence that the Defendant had the intent to distribute. Instead, Corporal Rinehart admits that his belief that 5 oz. of methamphetamine is a distributable amount is based on his assumption." (*Id.*) Defendant cites Rinehart's testimony where Rinehart said that at the time of the traffic stop, he didn't know whether Defendant was distributing any drugs to anybody, and cites Rinehart's limited involvement in the drug investigation outside of the traffic stop. (*Id.*) Defendant produces Rinehart's testimony that Rinehart's only evidence that Defendant was distributing was an assumption based on Rinehart's experience that five ounces of methamphetamine is a distribution quantity. (*Id.* at 3) Defendant argues that "this testimony does nothing to establish credible evidence that the Defendant had the intent to distribute." (*Id.*)

Next, Defendant analyzes the testimony of Charleston Police Department Detective Jordan Hilbert.[2] (*Id.* at 4.) Just as Defendant argued regarding Rinehart, Defendant argues that Hilbert "provided no credible evidence that the Defendant had the intent to distribute the methamphetamine." (*Id.*) Defendant presents testimony that shows Hilbert's role in the

---

[2] Defendant incorrectly refers to Jordan Hilbert as "Brandon." (ECF No. 772 at 4.)

investigation was limited to ordering the traffic stop, surveilling the stop, and then retrieving and submitting the confiscated drugs afterwards.  (*Id.*)   Defendant also presents testimony that shows Hilbert had no role in investigating Defendant after the stop, had no knowledge of who Defendant was distributing to, and Hilbert's only evidence as to Defendant's intent to distribute was from Hilbert's experience based on the quantity of methamphetamine seized.  (*Id.* at 4-5.)   Defendant reiterates that "this testimony does nothing to establish credible evidence that the Defendant had the intent to distribute."  (*Id.* at 5.)   Before moving on to analyze the testimony of FBI Special Agent Jennifer King, Defendant briefly touches on the testimony of DEA Chemist Michaela Harper, which was "used exclusively to show that the methamphetamine confiscated at the February 2, 2023, traffic stop, was, in fact, methamphetamine."  (*Id.*)   Defendant correctly asserts that this testimony did not provide evidence of intent to distribute.  (*Id.*)

Finally, Defendant analyzed the testimony of FBI Special Agent King, the investigative case Agent, asserting that "she only testified to her background and experiences with other individuals and her assumptions as to the quantity of the drugs involved. She offered no credible evidence that the Defendant had the intent to distribute the drugs [seized at the stop]."  (*Id.* at 6.)   First, Defendant produces testimony from Agent King about an intercepted call between Defendant and Karl Funderburk.  (*Id.*)   Defendant argues that "[t]his call does nothing to incriminate the Defendant other than to say he is a buyer of drugs" and "does nothing to establish intent to deliver."  (*Id.* at 6-7.)   Further, Defendant argues that the other intercepted calls "were simply calls regarding the meeting location and were not substantive evidence of intent to deliver."  (*Id.* at 7.)

Next, Defendant argues that Agent King's testimony that there is "evidence of drug distribution" on Defendant's seized cell phone "does not operate as credible evidence of Mr.

Lively's intent to distribute the methamphetamine on other occasions." (*Id.* at 9.) Defendant also argues that the other drug transactions that Agent King testified about weren't verified by King and were only based on her training and experience. (*Id.* at 10.) Defendant also addresses Agent King's testimony about the intercepted call where Defendant tells Funderburk about "getting right" with his people. (*Id.* at 11; Trial Tr. at 116-117.) Defendant argues that "[a]t first glance, this statement sounds prejudicial; however, Special Agent King has no evidence as to who those people are or if this conversation was in fact true." (ECF No. 772 at 11.) Defendant concludes that "this testimony does nothing to establish credible evidence that the Defendant had the intent to distribute" and that based on all of the testimony, "the Prosecution failed to submit substantial evidence as to the Defendant's intent to distribute to allow a rational jury to find Mr. Lively guilty beyond a reasonable doubt." (ECF No. 772 at 11.) Outside of Defendant's testimony analysis, Defendant offered no caselaw whatsoever regarding the legal sufficiency of intent as it relates to the facts and charges of this case.

Finally, Defendant revisits his objection to Agent King's testimony that there was evidence of drug distribution on the phone. (*Id.* at 9.) At trial, in regard to the cell phone, Defendant's counsel asked Agent King "[a]nd did it have – you didn't offer anything into evidence from that cell phone, correct?" (Trial Tr. at 107:3-4.) Agent King responded by saying "I mean, there is evidence of drug distribution on the phone, yes." (*Id.* at 107:5-6.) Defendant then objected by stating "I'm going to object because it's not in evidence. The Government did not introduce this. So, I would ask to ask the jury to disregard." (*Id.* at 107:7-9.) The Court overruled this objection. (*Id.* at 107:12.) Defendant argues that the answer to the question should have been "a simple no" and "[d]espite the clear nature of the question," Agent King volunteered that the cell phone had

6

evidence of drug distribution.  (ECF No. 772 at 9.)  Defendant states that in "[r]ecognizing the impropriety of Agent King's highly prejudicial and unsolicited testimony, undersigned counsel immediately objected and moved to strike the testimony."  (*Id.*)

On the other side, the Government asserts that "Defendant is wrong about the evidence because it easily established his intent to distribute the 138 grams of methamphetamine seized from him during the traffic stop."  (ECF No. 776 at 3.)  The Government argues "[t]he quantity of involved drugs alone, especially when coupled with testimony about the significance of that quantity, can support a jury's finding of intent to distribute."  (*Id.*)  In support, the Government quotes *United States v. Welebir* that "[i]ntent is rarely susceptible of direct proof; it is generally to be inferred from the circumstances. In the case of illicit drugs, intent to distribute may in proper circumstances be inferred from the amount in possession."  498 F.2d 346, 350 (4th Cir. 1974); (*Id.*).  The Government cites various parts of Corporal Rinehart's testimony about distribution amounts, including: "most users will have a gram or less"; "when you come across someone that has five ounces, we're looking at 140 grams. That's – in my mind, that puts me in the distribution mindset for that person"; "one use for methamphetamine is not even a gram"; and the amount seized during the stop was "not a user amount."  (ECF No. 776. at 3-4.)  The Government argues that "Rinehart's testimony alone was sufficient to support the jury's verdict."  (*Id.* at 4.) However, even with that aside, the Government argues that "[t]he jury also knew that defendant was receiving this methamphetamine partially on consignment, and that he was likely purchasing it with someone else's money. This would lead to the fair inference that defendant intended to sell some of the methamphetamine in order to re-pay Funderburk, or that he owed other people a

portion of the seized methamphetamine and, therefore, intended to distribute it to those people." (*Id.* at 5.)

Setting aside the above facts, the Government argues that Defendant's entire position is flawed because "Defendant is mistaken about the law as it relates to conspiracy when he claims that the United States had to prove his intent to distribute methamphetamine." (*Id.*) The Government quotes *Ocasio v. United States* that "[a] specific intent to distribute drugs oneself is not required to secure a conviction for participating in a drug-trafficking conspiracy" and "[n]ot only is it unnecessary for each member of a conspiracy to agree to commit each element of the substantive offense, but also a conspirator may be convicted even though he was incapable of committing the substantive offense himself." 578 U.S. 282, 288-89 (2016); (ECF No. 776 at 5-6.)

The Government states that "[t]he United States only had to prove three elements as to Count One: 1) that an agreement to distribute 50 grams or more of methamphetamine existed between two or more persons; 2) that defendant knew of this agreement or conspiracy; and 3) that defendant knowingly and voluntarily participated in the agreement or conspiracy." (ECF No. 776 at 6) (citing *United States v. Burgos*, 94 F.3d 849, 857 (1996)). Further, the Government argues the evidence shows that Defendant warned coconspirator Karl Funderburk of the police presence in the area, and of potential police scrutiny of their illegal activities, by calling Funderburk after the traffic stop. (*Id.* at 7.) The Government says this is "tantamount to countersurveillance" which provided the conspiracy with an essential service and is sufficient by itself to convict Defendant on Count One "even without finding that defendant had the intent to distribute methamphetamine." (*Id.*) The Government goes on to argue that Defendant "cherry-picks" and

8

makes erroneous claims about the statements made by Hilbert and King and accuses Defendant of "mischaracterize[ing] the evidence." (*Id.* at 8-9.)

Finally, the Government contends that Defendant's arguments about the testimony regarding Defendant's cell phone are misplaced. (*Id.* at 10.) The Government argues that Defendant counsel's "question was not as clear as counsel contends" and "King's answer to that question was responsive to the question, and exactly what one should expect from an investigator who collects and logs evidence but does not offer it at trial as lawyers do." (*Id.*) The Government argues that the objection was correctly overruled and "defendant is trying to change the form of his objection now." (ECF No. 776 at 11.) The Government further contends that "Defendant cannot be allowed to amend the form of his trial objection after the trial is over and then fault the Court for not considering then-unstated grounds for that objection." (*Id.*) The Government concludes that "the jury had more than enough evidence upon which to base a finding of guilt on both counts. Defendant asks this Court to flout the law by making credibility determinations, ignoring certain testimony, and re-weighing the evidence. His motion should be denied." (*Id.* at 11-12.)

The Court agrees with the Government. First, intent to distribute on the part of the defendant himself is not a necessary element of conspiracy to distribute a controlled substance. "The elements of the offense of conspiracy to distribute a controlled substance are: '(1) an agreement to distribute [the controlled substance] . . . existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy.'" *United States v. Rowe*, 825 F. App'x 123, 124 (4th Cir. 2020) (quoting *United States v. Hackley*, 662 F.3d 671, 678 (4th Cir. 2011). At times, the charge of conspiracy

to distribute is phrased as "conspiracy to distribute and to possess with intent to distribute" a controlled substance, but the elements still do not change. For example, in *United States v. Anderson*, the Fourth Circuit presented the elements of conspiracy to distribute and to possess with intent to distribute cocaine as "'(1) an agreement between two or more persons to engage in conduct that violates a federal drug law; (2) the defendant's knowledge of the conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy.'" 597 F. App'x. 732, 733 (4th Cir. 2015) (quoting *United States v. Green,* 599 F.3d 360, 367 (4th Cir. 2010). Furthermore, Defendant has not cited any caselaw suggesting that "intent to distribute" must be specifically proved.

However, even if intent to distribute was required, "[o]ur precedents leave no doubt that 'intent to distribute may in proper circumstances be inferred from the amount of possession.'" *United States v. Starling*, 220 F. App'x 238, 242 (4th Cir. 2007) (quoting *United States v. Welebir*, 498 F.2d 346, 350 (4th Cir.1974)). "[I]ntent to distribute can be inferred from a number of factors, including but not limited to: (1) the quantity of the drugs; (2) the packaging; (3) where the drugs are hidden; and (4) the amount of cash seized with the drugs." *United States v. Collins*, 412 F.3d 515, 519 (4th Cir. 2005).

The Government can rely on the testimony and experienced-based opinions of law enforcement officers to support an inference of intent to distribute. Specifically, where law enforcement officers had "multiple years of experience investigating narcotics crimes," it was "permissible for them to testify based on their experience that the crack in question was a distribution quantity" *United States v. Batts*, 661 F. App'x 787, 790 (4th Cir. 2016) (unpublished); *see also United States v. Smith*, 962 F.3d 755, 767 (4th Cir. 2020) (finding that experienced police

officers may be permitted to testify as lay witnesses, based on their extensive experience, about "drug quantities and paraphernalia" and their relation to distribution quantities.)

In analyzing the facts and arguments presented, this Court "may not usurp the jury's exclusive function by weighing evidence, drawing inferences of fact, resolving evidentiary conflicts, or assessing [witness] credibility." *Harris*, 2012 WL 12891420 at *1. This Court must "view the evidence in the light most favorable to the prosecution, and inquire whether a rational trier of fact could [find] the essential elements of the charged offense beyond a reasonable doubt." *United States v. Singh*, 518 F.3d 236, 246 (4th Cir. 2008). Here, three law enforcement officers testified that, based on their training and experience, the amount of drugs seized from Defendant was consistent with distribution. From this testimony, the jury was free to draw the inference that Defendant intended to distribute those drugs in his possession. Further, the Government also played portions of the phone calls between Funderburk and Defendant from which the jury could draw a reasonable inference of intent to distribute. Upon applying the standards required by this court in reviewing the evidence presented at trial, this Court finds that the Government presented substantial evidence that would warrant a rational jury to find that Defendant was guilty beyond a reasonable doubt.

Finally, it is entirely unclear what argument Defendant is making regarding his objection to Agent King's testimony about the cell phone contents. At trial, Defendant objected to Agent King's answer about the cell phone contents by stating that "I'm going to object because it's not in evidence. The Government did not introduce this. So, I would ask to ask the jury to disregard." (Trial Tr. at 108:7-9.) The Court overruled this objection. (*Id.* at 108:12.) However, Defendant now argues that "counsel asked a very direct question" and "despite the clear nature of the

11

question," Agent King volunteered that the cell phone had evidence of drug distribution.   (ECF No. 772 at 9.)   Defendant appears to raise a new objection in asserting that "[t]his cell phone evidence was highly prejudicial and highly improper and this court should revisit its ruling on the objection - Special Agent King clearly did not answer the question that was asked of her."   (*Id.* at 9-10.)   Here, it appears that Defendant is objecting to King's answer as unresponsive, which Defendant did not do at trial.   To the extent Defendant is trying to make a new objection, this is impermissible under Federal Rule of Evidence 103.   To the extent Defendant is requesting the Court to review his original objection, counsel's question at trial was not as clear as Defendant contends because the form of the question changed mid-sentence.   (*See* Trial Tr. at 107:3-4.) Agent King's response to counsel's changing question was reasonable, and a witness is not limited to information offered on direct examination when answering questions on cross-examination — they must tell the truth in response to questions asked of them.   Regardless, Defendant did not make the proper objection during trial and cannot attempt to make such objection for the first time now.   Therefore, Defendant's Renewed Motion for Judgment of Acquittal (ECF No. 772) is **DENIED**.

### B.  Motion for New Trial

Also before the Court is Defendant's Motion for a New Trial based on an allegation that the Government failed to disclose exculpatory evidence necessary to his defense at trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).   (ECF No. 782.)   On July 15, 2024, the day before trial began, Special Agent King and Detective Jordan Hilbert conducted interviews with Defendant's wife and mother at Defendant's home.   (ECF No. 782 at 4.)   During the recorded interview, King asked if Defendant's mother or wife knew "a Jeremy and Anna."   (ECF No. 786

12

at 2.)  Defendant's mother said that their last name was "Hackney" and explained where they lived.  (*Id.*)  According to the Government, "King asked these questions to learn more about the other party to certain text messages from defendant's cell phone with a contact named 'Jeremy Anna,' with whom it appeared that defendant was negotiating drug deals."  (*Id.*)

Following that interview, King and Hilbert were unable to locate Jeremy and Anna, but instead spoke with their son, Nick Hackney.  (*Id.* at 3.)  According to the Government:

> [H]e offered limited information during a brief discussion with investigators: 1) that his parents are methamphetamine addicts, 2) that he has seen them use methamphetamine before, 3) that he has a poor relationship with his parents, 4) that he has seen defendant drive a particular truck, 5) that his parents are friends with defendant, and 6) that he saw defendant in possession of a bag of drugs on one particular occasion. He also assumed that defendant was his parents' methamphetamine dealer but could not back up that assumption with any personal knowledge — he had never observed them buying drugs from defendant, for example.

(*Id.*)  This interview was not recorded and a report was not prepared memorializing it.  (*Id.*)  The same day, Defendant's counsel learned about the interview of Defendant's wife and mother and contacted the Government about it.  (ECF No. 782 at 4.)  The Government provided Defendant with a copy of the recorded interview but did not inform Defendant of the Nick Hackney interview.  (*Id.*)  At trial, Jeremy, Anna, and Nick Hackney did not testify, and the topic of Nick's interview did not come up until the cross examination of Agent King.  (Trial Tr. at 108-09.)

Where an alleged "*Brady*" violation forms the basis of a Rule 33 motion, the proper legal standard is more favorable to the defendant than" a motion based on new evidence.  *United States v. Cohn*, 166 F.App'x 4, 7 (4th Cir. 2006) (unpublished).  Specifically, "a new trial may be warranted even though the new evidence is merely impeaching." *Id.* (citing *United States v. Bagley,* 473 U.S. 667, 676 (1985).  Further, "the evidence only need be such that, on a new trial,

its disclosure would result in *a reasonable probability* of a different result, which is 'shown when the Government's evidentiary suppression undermines confidence in the outcome of the trial.'" *Id.* (quoting *Kyles v. Whitley,* 514 U.S. 419, 434 (1995)) (emphasis added).   In effect, a reasonable "probability of a different result" reiterates the materiality requirement that is essential to establishing a *Brady* violation.   *See United States v. Kelly*, 35 F.3d 929, 936 (4th Cir. 1994).

To prevail on a *Brady* claim, a defendant must show that the evidence (1) was favorable to the Defendant, either because it is exculpatory or impeaching, (2) was suppressed by the Government, and (3) was material to his defense, i.e., that he was prejudiced by the suppression. *United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010).

Defendant is alleging a *Brady* violation by the Government regarding a failure to turn over information about the interview with Nick Hackney, arguing that "[h]ad the Defendant been provided with this exculpatory impeachment evidence, Defense counsel could have impeached Agent King's testimony definitely showing that she in fact had no credible evidence of Defendant's drug distribution as she led the jurors to believe."   (ECF No. 782 at 2.)   Defendant contends he is entitled to a new trial on both counts because of this alleged violation.   (*Id.* at 6.) In support of this, Defendant re-asserts many of his arguments from his Renewed Motion for Judgment of Acquittal, including that the only evidence the Government had as to Defendant's distribution were the witnesses' "assumptions based on weight."   (ECF No. 782 at 8.)

Defendant argues that, if Defendant was aware of the interview of Nick Hackney, Defendant could have impeached Agent King's testimony, and the jury would have been aware of "the fact that Nick Hackney told [King] that he had never seen the Defendant sell drugs to his parents in the first place."   (*Id.* at 19.)   Defendant alleges that this is an exculpatory statement

14

and is "material" and "favorable" evidence that adversely affects the credibility of a government witness.  (*Id.* at 17, 19, 20.)   Defendant also alleges that, because the interview was not disclosed before trial, the evidence was "suppressed," thus making the non-disclosure a *Brady* violation. (*Id.* at 19.)

On the other side, the Government argues that Defendant "has established none of the three required elements."  (ECF No. 786 at 6.)   First, the Government argues the evidence is not exculpatory because "it would have held no impeachment value as to any of the United States' witnesses."  (*Id.*)   The Government argues that it would not have helped impeach Agent King, because King did not discuss the interview with Nick Hackney on direct examination.  (*Id.*) Furthermore, the Government argues that "King's testimony was factually accurate in all respects" and King "never testified that Hackney saw a drug sale by defendant to Jeremy and Anna." (*Id.* at 8.)   The Government further asserts that "a witness's lack of personal knowledge regarding the illegal activities of another does not negate or even contradict affirmative evidence that the defendant did, in fact, commit the illegal activities."  (*Id.*)

The Government asserts that its case was built around the events that took place on February 2, 2023, and the Government did not have to prove any specific instances of distribution. (*Id.* at 9.)   The Government states it was only necessary to prove Defendant's knowing participation in a conspiracy to distribute, and his intent to distribute the methamphetamine in his possession on February 2, 2023.  (*Id.*)   "That Hackney had never witnessed such a transaction, even if considered competent proof of the fact that such a transaction had never occurred, was simply irrelevant to the issue of guilt."  (*Id.*)   The Government concludes its position as to the

15

favorability factor by arguing "[t]he evidence in question is not exculpatory; it would have been of no value to defendant at trial." (*Id.* at 10.)

As to the next *Brady* factor, the Government argues "even if the evidence did hold some small exculpatory value, it was not remotely material." (*Id.*) The Government argues that, based on the materiality standard, "defendant must do more than show that King's testimony made his conviction more likely and that 'discrediting her testimony might have changed the outcome of the trial.'" (*Id.*) (citing *Strickler v. Greene*, 527 U.S. 263, 291 (1999)). Citing *Greene*, the Government states "[t]he central question is therefore whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." (*Id.* at 11) (citations omitted). The Government asserts that, for the same reasons as argued against Defendant's Renewed Motion for Judgment of Acquittal, "the testimony adduced at trial from the other witnesses would have been enough — even without King's testimony — to support the jury's verdict." (*Id.* at 12.) The Government argues the evidence surrounding Hackney was "extremely tangential" to the Government's case, so even having access to the evidence to impeach King would have done nothing to impair King's credibility or "counter the other strong, conclusive evidence of guilt produced by the United States at trial." (*Id.* at 12-13.)

As to the final *Brady* factor, the Government argues the evidence was not suppressed because the Defendant had received the evidence taken from his cell phone and received the recorded interview with his mother and wife where the Government was informed of the Hackneys and their location. (*Id.* at 13.) Citing *United States v. Wilson*, the Government states that *Brady* does not apply if the evidence is available to the Defendant from another source or in a source where a reasonable defendant would have looked. 901 F.2d 378, 380 (4th Cir. 1990); (*Id.*). The

16

Government argues that Defendant knew who Jeremy and Anna were based on the information from Defendant's phone and the recorded conversation provided to Defendant. (*Id.* at 13-14) Therefore, Defendant had access to the same knowledge as the Government. (*Id.* at 14.) The Government also asserts that based on the recorded conversation that was provided to Defendant, he also had the knowledge of where to find the Hackneys and their son. (*Id.*) The Government argues then, that a reasonable investigation by the defense would have uncovered the same information that Nick Hackney provided to Agent King. (*Id.*) The Government concludes that because this information was readily available to Defendant, it was not suppressed, and the Defense has failed to meet any of the *Brady* factors. (*Id.* at 14-15.)

This Court again agrees with the Government. First, regarding the favorability of the evidence in question, the Fourth Circuit stated in *United States v. Cohn* that a "lack of personal knowledge of [a defendant's] involvement does not contradict the affirmative testimony of other [witnesses] regarding his involvement." 166 F. App'x 4, 13 (4th Cir. 2006). As the Government notes, this principle can be applied more broadly to state that the absence of one potential witness's knowledge regarding drug distribution does not contradict other affirmative evidence of such distribution.

Evidence is favorable to a Defendant if it is exculpatory or impeaching. *Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010). As supported by *Cohn*, the fact that Nick Hackney never saw Defendant distribute drugs to his parents is not exculpatory because it does not contradict the evidence about the seized drugs being a distribution quantity and cannot be reasonably interpreted as evidence that Defendant has never distributed or intended to distribute drugs to anybody. As the Government put it, "[t]here are likely tens of thousands of people in Kanawha County alone

17

who have never seen defendant sell methamphetamine to a customer. They cannot be said to each possess exculpatory information."   (ECF No. 786 at 8.)   Furthermore, the evidence did not have impeachment value because the Hackneys did not testify and because the information only arose during the cross-examination of Agent King.   King never testified that Nick Hackney witnessed a drug sale from the Defendant, nor did she imply it.   (Trial Tr. at 107-109).   Rather, the implication that Defendant distributed to the Hackneys came from the evidence on Defendant's cell phone.   (Trial Tr. at 107.)   King's testimony that "there is evidence of drug distribution on the phone" is not contradicted by the fact that Nick Hackney never witnessed Defendant sell drugs to his parents, and it certainly does not undermine King's credibility, as King's statements were truthful.   Therefore, this Court finds that the evidence was neither exculpatory, nor impeaching, and thus not "valuable" as it pertains to *Brady*.

As to the next *Brady* factor, evidence is "material" when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different."   *Bagley*, 473 U.S. at 682.   "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."   *Id.*   Materiality is evaluated "in the context of the entire record."   *Turner v. United States*, 582 U.S. 313, 314 (2017) (internal quotation marks omitted). As such, even "evidence [actually] impeaching an eyewitness may not be material if the State's other evidence is strong enough to sustain confidence in the verdict."   *Smith v. Cain*, 565 U.S. 73, 76 (2012).

Here, the evidence produced by the Government is more than sufficient to uphold confidence in the jury's verdict.   The strength of the Government's case and evidence is derived from the five ounces of methamphetamine seized from Defendant during the traffic stop, the

testimony from three law enforcement officers that such amount of drugs is a distribution quantity, and other inferences derived from intercepted calls between Defendant and Karl Funderburk.   For example, Corporal Rinehart testified, based on his experience and training, that "most users will have a gram or less" of methamphetamine.   (Trial Tr. at 25:9-24.)   Rinehart further testified that "one use for methamphetamine is not even a gram," so five ounces is "not a user amount, just plain and simple."   (*Id.*)   Similarly, Detective Hilbert testified that based on his training and experience, "approximately five ounces of methamphetamine is not a user amount."   (*Id.* at 51:3-4.)   Finally, Agent King also testified that in her experience, five amounts of methamphetamine is a distribution amount.   (*Id.* at 115-116).

Outside of the amount being a distribution quantity, King testified that there was other evidence of distribution, such as the intercepted calls where Defendant suggested "getting right with his people."   (*Id.* at 116:6-23.)   King testified that "getting right" suggested Defendant was using somebody else's money to purchase the methamphetamine, which provides more support that the drugs were a distribution amount and Defendant was selling the drugs to make back the owed money.   (*Id.*)   Finally, King testified that there was other evidence on Defendant's cell phone that he was distributing, including conversations with the Hackneys, and individuals named "DJ Outlaw" and "Jamie Hall."   (*Id.* at 107:16-22.)   Therefore, even if the evidence was introduced that Nick Hackney never saw Defendant distribute drugs to his parents, there is more than enough evidence in the entire context of the record to uphold the confidence of the jury's decision, and there is no reasonable probability that the results of the proceedings would have been different.

Finally, the last *Brady* factor to consider is whether the Government suppressed the interview with Nick Hackney.   A "prosecutor is not required to deliver his entire file to defense counsel, but *only* to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."   *Bagley,* 473 U.S. at 675 (emphasis added).   Likewise, the *Brady* rule "does not compel the disclosure of evidence available to the defendant from other sources, including diligent investigation by the defense."   *Stockton v. Murray,* 41 F.3d 920, 927 (4th Cir. 1994); *see also Wilson,* 901 F.2d at 381 (holding that "where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine.").   Thus, nondisclosure is justified if "the government possesses no exculpatory evidence that would be unavailable to a reasonably diligent defendant."   *Barnes v. Thompson,* 58 F.3d 971, 975 n. 4 (4th Cir. 1995). Here, just as outlined above, Defendant was aware of the Hackneys through the recorded interview and the evidence on Defendant's cell phone.   A diligent investigation could have easily uncovered the fact that Nick Hackney never witnessed Defendant distribute drugs to his parents. Furthermore, Defendant himself would have known whether he did or did not deal to the Hackneys, and thus would have known whether he dealt drugs to them in the presence of Nick Hackney in the first place.   Therefore, the evidence was not suppressed by the Government, and the Government's nondisclosure certainly did not deprive Defendant of an unfair trial.[3]   Because of this, the Government did not violate its *Brady* obligation and the Defendant's Motion for a New Trial (ECF No. 782) is **DENIED**.

---

[3] This Court also held a hearing on Defendant's post-trial motions on November 4, 2024.  (ECF No. 822.)  This Court finds that the arguments made during the hearing aligned with those made in the parties' briefs.

*IV.*    *CONCLUSION*

For the above-mentioned reasons, Defendant's Renewed Motion for Judgment of Acquittal (ECF No. 772) and Motion for New Trial (ECF No. 782) are **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:        April 28, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

21